IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| IRON MOUNTAIN CONSTRUCTION, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) CASE NO.: 2:03-CV-3027-VEH |
| U.S. STEEL GROUP, A UNIT OF USX CORPORATION, | ) ) ) |
| Defendant. | ) |

MEMORANDUM OPINION ON DEFENDANT U.S. STEEL GROUP
MOTION FOR SUMMARY JUDGMENT

I. **INTRODUCTION AND BACKGROUND**

This is an action removed from the Circuit Court of Jefferson County, Alabama. In a three-paragraph Complaint, Plaintiff Iron Mountain Construction ("Iron Mountain") sued U.S. Steel Group, a unit of USX Corporation now doing business and known as United States Steel Corporation ("U.S. Steel") for breach of contract.

The action is brought by an Alabama corporation against a corporate defendant whose state of incorporation and principal place of business are outside Alabama. The amount in controversy exceeds $75,000.00 and the court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). A substantial portion of the events

giving rise to the claim took place in the Northern District of Alabama and venue is proper pursuant to 28 U.S.C. § 1391(a)(2).[1]

U.S. Steel has, pursuant to Fed. R. Civ. P. 56, filed a Motion for Summary Judgment ("the Motion") with a Memorandum in Support of the Motion. (Doc. 19). Iron Mountain has submitted a Memorandum in Opposition to the Motion. (Doc. 20). U.S. Steel has filed a Reply in support of the Motion. (Doc. 21).

The parties agree that the dispute arises from a contract ("Agreement," "Blanket Agreement") executed on May 1, 2000. Ex. A.[2] Iron Mountain asserts that a January 5, 2001, letter signed by Charles Hrach, U.S. Steel's Purchasing Agent ("Hrach letter"), Exhibit F., modified the Agreement, that U.S. Steel breached the modified Agreement by prematurely terminating the "time and materials" provisions, and that Iron Mountain was damaged as a result. Iron Mountain asserts that U.S. Steel had a good-faith obligation to work with Iron Mountain under the Agreement and to assign Iron Mountain time and materials projects whenever feasible, and that there had been a pattern established creating a course of dealing or performance

---

[1] U.S. Steel's being a citizen of Pennsylvania and the amount in controversy exceeding $75,000 can be inferred from the Complaint's exhibits and punitive damages claim. The Petition for Removal, and its exhibits and attachments, independently set forth the necessary elements of subject matter jurisdiction and venue.

[2] Unless indicated otherwise, references to Exhibits will mean the Exhibits attached to or filed with the Motion.

which U.S. Steel was obligated to adhere to in good faith.

## II. THE BLANKET AGREEMENT

The Blanket Agreement is a twenty-eight (28) page single-spaced form contract. Only the provisions bearing on the Motion will be discussed.

Iron Mountain is a contractor to U.S. Steel. The Agreement says in the "Whereas" clauses that the work is to be performed on a non-exclusive basis, and that Iron Mountain recognizes and agrees that there is no minimum quantity of work and Iron Mountain is not guaranteed any work. Agreement, p. 1, ¶¶ 2 - 3. U.S. Steel says this language shows that Iron Mountain had no expectancy of work, and therefore has no damages. The court disagrees: the terms of the Agreement are found after the "whereas" clauses and begin with the words " . . . the parties hereto, intending to be legally bound, have agreed and do hereby agree as follows . . . " Agreement, p.2 at top. The "Whereas" clauses are relevant in determining the intent of the parties, but they are not part of the Agreement.

The Agreement, at Article 1.,1 provides that Iron Mountain will perform work " . . . for, or at the request or on behalf of USS . . . " during the term (May 1, 2000 - April 30, 2005). Work requests can be made by purchase orders, individual written contracts or agreements, or by verbal requests. Article 1.1(I) - (iii), p. 2. A work

request, combined with the terms of the Blanket Agreement, becomes the "Contract Documents," Article 1.1, p.2.

The Blanket Agreement contains choice of law provisions, Article 19 - Governing Laws and Regulations, Agreement, p.20. The relevant language of Article 19.1 says the Agreement " . . . shall be governed by the laws of the Commonwealth of Pennsylvania, excluding Pennsylvania conflict of laws rules . . . "

The Blanket Agreement provides that U.S. Steel may terminate the Agreement, with or without cause, by a thirty(30) day advance written notice to Iron Mountain. Agreement, Article 29.3(a), p. 26.

Article 33.1 of the Agreement contains both merger and modification provisions. The merger clause says that prior representations, promises and conditions not contained in the Agreement are not binding on either party. And the Agreement cannot be modified " . . . unless hereafter made in a writing which specifically amends this Agreement and which is signed by USS' Purchasing Agent . . . " Agreement, Page 28.

Hrach is the USS Purchasing Agent and his letter makes specific reference to USS's commitment ". . . to extend our purchase agreement with you for the period of time equal to the period of adjustment." Ex. F. The parties agree that the 8%

discount period ran from January 17, 2001 - February 28, 2003, so the Agreement's term, if extended, would have been extended for 26 months, or until June 30, 2007.

USS terminated the Agreement with Iron Mountain with a 30-day writing dated June 30, 2003.[3] Other contractors were terminated as well. The impetus for the termination was U.S. Steel's entry into a union labor agreement which, as a practical matter, took away the work that had been given to Iron Mountain.

### III. STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings

---

[3] The termination was of a Blanket Purchase Order effective from April 13, 1995 through August 10, 2003. Ex. D.

and, by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.

The substantive law will identify which facts are material and which are irrelevant. *Chapman*, 229 F.3d at 1023; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Chapman*, 229 F.3d at 1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248; *Chapman*, 229 F.3d at 1023. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. *See Fitzpatrick*, 2 F.3d at 1115-17 (citing *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991)(*en banc*)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine

issue of material fact, i.e., facts that would entitle it to a directed verdict if not controverted at trial. *Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of any evidence in the record in support of a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the court that there is an absence of evidence to support the non-moving party's case. *Fitzpatrick*, 2 F.3d at 1115-16. If the movant meets its initial burden

by using this second method, the non-moving party may either point to evidence in the court record, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

## IV. DISCUSSION

A federal court in a diversity case is required to apply the laws, including principles of conflict of laws, of the state in which the federal court sits. *O'Neal v. Kennamer,* 958 F.2d 1044, 1046 (11th Cir.1992).

U.S. Steel does not address the choice of law issues arising under the contract, citing Alabama cases as authority. Iron Mountain does discuss the choice of law question, citing *Colonial Life & Acc. Ins. Co.*, 358 F.3d 1306, 1308 (11th Cir. 2004), which in turn cites *Cherry, Bekaert & Holland v. Brown*, 582 So.2d 502, 506 (Ala.1991) for Alabama's choice of law doctrines:

> 1. In contract actions, Alabama applies the doctrine of *lex loci contractus:* the

contract is governed by laws of the state where it is made except where the parties have legally contracted with reference to laws of another jurisdiction;

2. In tort actions, Alabama applies the doctrine of doctrine of *lex loci delicti*: the doctrine requires the court to determine the substantive rights of the injured party according to the laws of the state where injury occurred, *Id.*;

3. Contract damages are determined under the laws of the state governing the contract. *Colonial Life, supra at 1310*, citing *Shelter Mut. Ins. Co. v. Barton,* 822 So.2d 1149, 1158 (Ala.2001).

Pennsylvania, like Alabama, allows contracting parties to modify their agreement by mutual consent. *Kreutzer v. Monterey County Herald Co. Herald Co.*, 747 A.2d 358, 362 (Pa. 2000). To the extent that the modification alters the original contract, a new contract is created. *Melat v. Melat*, 602 A.2d 380, 385 (Pa. Super. Ct. 1992). In effect, the modification acts as a substitute for the original contract, but only to the extent that the modification alters the original contract. *Melat*, 602 A.2d at 385, citing *Knight v. Gulf Refining Co.,* 311 Pa. 357, 360, 166 A. 880, 881 (1933).

Iron Mountain first argues mutual assent to a contract modification is a factual issue which must be resolved at a trial on the merits and cannot be decided by the court as a matter of law. *Trimble v. Fester*, 162 A. 337, 340 (Pa. Super. Ct. 1932)

(concluding that the issue of whether the portion of a written contract which required that work be completed within 90 days was abrogated presented a jury question).

The court has reviewed *Trimble*, and does not disagree with its holding as applied to its facts (which the court said it was doing). And the court adopts as applicable Pennsylvania law the holding of *Holloway v. Frick*, 149 Pa. 178, 24 A. 201, where the Pennsylvania Supreme Court said: "'It is always competent for the parties to a written contract to show that it was subsequently abandoned in whole or in part, modified, changed or a new one substituted. And this may be shown by parol, by showing either an express agreement, or actions necessarily involving the alteration."

Iron Mountain's second argument is that Hrach's letter of January 5, 2001, stated that in return for Iron Mountain's grant of a temporary 8% discount in price, U.S. Steel (a) committed to return to normal pricing once the economic crisis had passed, and (b) promised to extend the term of the Blanket Agreement "for the period of time equal to the duration of the adjustment." (Ex. F.) Iron Mountain says this language, under the cited principles of Pennsylvania law, means

> [W]hether this language served to modify the original Blanket Agreement by extending the 5-year contract term for the length of the discount period and abrogating U.S. Steel's right to terminate said Agreement without cause prior to the expiration of the extension period

presents a material question of fact. Hence, U.S. Steel's motion for summary judgment must be denied.

Opposition Argument, I.B.2.

Applying the law as stated to the Agreement, I say there is no material dispute about the following facts:

1. The parties modified their agreement as stated in Hrach's letter.

2. The modification was mutual. The parties agree U.S. Steel gave Iron Mountain work during the 26 month price reduction period, and Iron Mountain performed the work at the lower price. I reject Iron Mountain's assertion that mutual assent to the modification presents a jury question. Iron Mountain's performing work under the modified terms of the Agreement is sufficient proof of its assent to the terms set out in Hrach's letter.

3. Iron Mountain was provided the 30-day advance termination notice required under the Agreement.

I hold that, as a matter of contract construction, with no need for parol evidence, that the Hrach letter, and Iron Mountain's performance of work under the modified (1. and 2., above) Agreement, extended the **term** of the Agreement by changing the expiration date from April 30, 2005 to June 30, 2007.

What I cannot find as a material factual dispute, because it contradicts the

unambiguous terms of the (modified) Agreement, is that the modification of the Agreement meant U.S. Steel lost the right to terminate Iron Mountain, with or without cause on thirty (30) days' written notice. I have no doubt, and the deposition testimony of Gerald Peters, Iron Mountain's president confirms it, that Iron Mountain **expected** to receive sufficient future work from U.S. Steel to make up the $200,000.00 lost profits it sustained during the 26 month price reduction. But Iron Mountain has pointed to no writing signed by U.S. Steel saying that, and the court has not found one in the parties' submissions. Iron Mountain says U.S. Steel had a contractual duty to continue to assign it work; the Agreement contains no such requirement. Iron Mountain says the parties' performance history or course of dealing and performance under the Agreement negated U.S. Steel's right to terminate the Agreement. There is no evidence supporting that assertion. There is no evidence that U.S. Steel ever tried to terminate the Agreement, but acquiesced in Iron Mountain's refusal to accept the termination.

Iron Mountain's conclusory assertion that U.S. Steel gave up the right to terminate the Agreement as part of the price reduction / term extension modification of the Agreement, absent admissible evidence that the termination provisions of the Agreement were also mutually modified, does not create a material factual dispute that has to be resolved by the jury.

Iron Mountain also says there is a factual issue regarding U.S. Steel's "good faith" performance of the Agreement. I have reviewed Pennsylvania law on the obligation of good faith in the performance of a contract. The most cited case is *Corgan v. George F. Lee Coal Co.*, 218 Pa. 286, 67 A. 655(Pa. 1907), which, in an employment context, said one employed as foreman "for so long a time up to five years that he satisfactorily performs his duties as foreman" may be dismissed by his employer whenever he becomes in good faith dissatisfied with his services, and such a discharge will not be unlawful because the employer gave a wrong reason for it, when he had the right to discharge him for some other cause, or none at all:

> It is suggested here that dissatisfaction with the manner in which plaintiff performed his duties as foreman was not alleged as a reason for the discharge; but in *Allentown Iron Co. v. McLaughlin*, 1 Monaghan, 726, 16 Atl. 852, it was held by this court that, while the master might not have the right to discharge his servant for the cause assigned by him, 'if, at the time, the defendant company had a right to discharge him for any cause, such discharge would not be unlawful because a wrong reason had been given for it.' The same principle is laid down in <u>Wood on Master & Servant</u>, § 121: 'The master is not bound to give any reason for the dismissal at the time, and, if he does, he is not thereby estopped from setting up any other or different cause which really existed when the servant was discharged.' Other authorities to the same effect are numerous. Thus in *Rossiter v. Cooper*, 23 Vt. 522, where a contract of employment provided that the employer, if he became dissatisfied, had the right to dismiss the employé [sic] upon giving him one day's notice, it was held that the employer was at liberty at any time to put an end to the contract, without informing the employé of the ground of his dissatisfaction, and without in fact having any satisfactory reason for it. In *Koehler v. Buhl*, 94 Mich. 496, 54 N. W. 157, it was said: 'It is settled

> law that, where a person contracts to do work to the satisfaction of his employer, the employer is the judge, and the question of the reasonableness of his judgment is not a question for the jury.'

*Coogan*, 218 A. 386, 389 - 390.

At best, a discharged employee may have an action for damages for the length of the termination period:

> Under contract of employment by year for indefinite period which provides that, in event of employee's removal from her position through contingencies enumerated beyond control of either party, she is to be paid full consideration for one year without performance of any service, unless six months' written notice of intention to terminate contract is given prior to its termination, where employer's executor serves on employee six months' notice of intention to terminate which contains clause relieving her of further duties, notice of intention to terminate being contemporaneous with her removal, it is not the six months' notice contemplated by the contract, so as to defeat her right to compensation for a year without performance of any services.

*In re Mershon's Estate*, 11 Pa. D. & C. 271 (Pa.Orph., 1928)

Iron Mountain has made no claim that it suffered contractual damages in the month of June 2003, the month U.S. Steel terminated the Agreement.

There is one other point made by Iron Mountain which bears comment. In its Opposition, II., where Iron Mountain says its request for punitive damages is valid, Iron Mountain cites Pennsylvania authority supporting punitive damages where the defendant did not intend to perform the contract at the time it was made. *Grode v. Mutual Fire, Marine, and Inland Ins. Co.*, 623 A.2d 933, 937 (Pa. Commw. Ct.

1993). Accepting this as an accurate statement of the law, I see it as authority for a claim Iron Mountain did not make: that in 1995 when the Blanket Agreement was executed, or in January 2001, when the Hrach letter was written, U.S. Steel did not intend to give Iron Mountain further work, or intended to stop giving Iron Mountain work shortly after the price reduction was eliminated. In other words, punitive damages are permitted because of U.S. Steel's promissory fraud. The relevant facts before this court, however, are: (1) Iron Mountain did not plead promissory fraud; and (2) there is no evidence, prior to the notice of termination, of U.S. Steel's intent to stop giving Iron Mountain work. Even if there were such evidence of U.S. Steel's intent, U.S. Steel had the right under the Agreement to give Iron Mountain as much, or as little, work as U.S. Steel chose to give.

For these reasons, U.S. Steel's Motion for Summary Judgment will be **GRANTED**, and judgment will be entered in favor of U.S. Steel and against Iron Mountain on all relief sought in the Complaint.

A separate Order will issue.

Done on January 3, 2006.

*[signature]*
**VIRGINIA EMERSON HOPKINS**
United States District Judge